## PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO DISPENSE WITH CONSENT TO ADOPTION (and a companion case).

Middlesex. March 6, 1986. — April 9, 1986.

Present: GRANT, CUTTER, & KASS, JJ.

*Adoption*, Dispensing with parent's consent. *Minor*, Custody, Temporary custody. *Parent and Child*, Adoption, Custody. *Probate Court*, Jurisdiction, Uniform practices. *Words*, "Parent," "Custody."

On a petition brought by the Department of Social Services under G. L. c. 119, § 23(C), to obtain custody of a child whose parents suffered from chronic mental illness, there was no merit to the mother's contention that the apparent willingness of the child's paternal aunt and her husband to have the care of the child deprived the Probate Court of jurisdiction to entertain the petition. [65]

The word "responsibility" as used in G. L. c. 119, § 23(C), includes "custody" for purposes of bringing a petition under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a minor child. [65]

Under G. L. c. 119, § 23(C), a Probate Court has authority to issue an order for temporary custody of a minor child. [66]

In the circumstances, the failure to notify a mother of proceedings brought by the Department of Social Services for temporary custody of the mother's newborn child did not deprive the mother of any constitutional or other right which could not have been litigated and vindicated in ensuing proceedings to dispense with need for parental consent to adoption brought by the department under G. L. c. 210, § 3. [66-68]

In proceedings to dispense with consent to adoption of a minor child born to parents suffering from chronic mental illness, there was no merit to the mother's contention that her nomination of relatives of the child to be the caretakers was entitled to preference over the plan proposed by the Department of Social Services under G. L. c. 210, § 3 (*c*), that the child be adopted by the foster parents with whom she had been placed when four days old. [68-69]

In proceedings brought by the Department of Social Services under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a minor child, the evidence was sufficient to warrant the judge's decision to reject, in the best interests of the child, the mother's nomination of an aunt and uncle as caretakers for the child, and to approve the depart-

ment's plan for adoption of the child by the foster parents with whom she had been placed when four days old. [69]

PETITIONS filed in the Middlesex Division of the Probate and Family Court Department on July 19, 1983, and February 9, 1984, respectively.

The cases were heard by *Edward M. Ginsburg*, J.

*Bette Ann Winik* for the mother.

*Despena Fillios Billings*, Assistant Attorney General, for Department of Social Services.

*Susan Klueppel* for the minor.

*Jacquelynne Bowman, Susan H. Levin, & Susan G. Anderson*, for Jane Doe & others, amici curiae, submitted a brief.

GRANT, J. The unwed mother of the child has appealed from decrees adverse to her which have been entered in a Probate Court on separate petitions filed by the Department of Social Services (department) (1) to obtain custody of the child (G. L. c. 119, § 23[C], as appearing in St. 1973, c. 925, § 40) and (2) to dispense with any need for consent to adoption of the child (G. L. c. 210, § 3[b] [as most recently amended by St. 1983, c. 437] and [c] [as appearing in St. 1972, c. 800, § 2]). Both parents suffer from chronic mental illness. The child was born in the Westborough State Hospital without benefit of medical assistance at a time when the father was confined in the Bridgewater State Hospital.

The department was advised of the impending birth by a social worker at Westborough who reported (under G. L. c. 119, § 51A) that the mother, then eight months pregnant, was refusing to accept prenatal care. The department consulted with the mother's parents, who professed inability or unwillingness to care for the child and advised that none of the mother's relatives was available for that purpose. Due to a miscalculation, the child was born at Westborough on July 18, 1983. She and the mother were immediately removed to Framingham Union Hospital, where both were determined to be in good physical health. The mother was threatening to take the child with her and return to Westborough. The day after the child

was born, the department, in the belief that it was faced with an emergency, filed a petition under G. L. c. 119, § 23(C), to secure custody of the child. On the day the petition was filed (July 19, 1983) the department sought and obtained an order for temporary custody of the child.

The paternal grandmother (a widow) was consulted; she advised that there was no one on the father's side (he had seven surviving siblings) available to care for the child at that time. Anticipating a prolonged period of mental incapacity of both parents, the department, within days of the temporary order, placed the child at legal risk with a childless couple who had previously been approved for adoption.

No permanent, or even a temporary, solution appeared in the offing, and, on February 9, 1984, the department filed a petition under G. L. c. 210, § 3(b) and (c), to dispense with any need for consent to adoption. The court ordered both petitions consolidated for trial and appointed separate counsel and a separate guardian ad litem to represent each parent. Counsel and a guardian ad litem were appointed to represent the child, who continued in the care of the same foster parents until the time of trial. At some point which is not clear from the evidence, the mother submitted a plan in which she nominated the child's paternal aunt and the latter's husband (uncle) to have the care of the child. Shortly before trial the aunt and uncle professed a desire to adopt the child.

Trial was had during the period February 25 through 28, 1985. The judge promptly filed comprehensive findings of fact and conclusions of law and entered decrees granting permanent custody of the child to the department and dispensing with the need for notice to or the consent of either parent to the adoption of the child on any petition for that purpose which might be sponsored by the department.[1] The mother appealed.

---

[1] The father has never seen the child. He participated in the trial to the extent of urging the court to award custody to his sister and the uncle. Although the father of a child born out of wedlock is not one of those named in G. L. c. 210, § 2, without whose consent a child cannot be adopted, his rights were heard and determined concurrently with those of the mother. See G. L. c. 210, § 4A; *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 114 n.1, 116-117 (1984); *Custody of a Minor (No. 1)*, 17 Mass. App. Ct. 1016, 1017 (1984).

We turn now to the various questions raised by counsel for the mother and by counsel for the amici. Before doing so, we note that the appeal is somewhat unusual in the respect that there is no challenge to the judge's findings that both parents are unfit to care for the child in the foreseeable future.[2]

1. There is no merit to the contention that the Probate Court lacked jurisdiction to entertain the petition under G. L. c. 119, § 23(C). That section is explicit that its provisions are available whenever "any child under eighteen years of age . . . is without proper guardianship due to the . . . incapacity or unfitness of [a] parent." The word "parent" as used in § 23(C) is defined in the preceding § 21 to mean "mother or father" unless the context in which it appears indicates an intention to employ the broader definition of "parent" found in G. L. c. 118, § 1. *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 582 n.8 (1981). There is nothing in § 23(C) which sends us to the broader definition.

2. In common understanding, the word "responsibility" as used in § 23(C) includes "custody." See, e.g., *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 575; *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass. 482, 483 (1982). That section expressly provides that the word "responsibility" "shall include" what are virtually all the incidents of legal custody, namely, "the right to determine the child's place of abode, medical care, and education; to control visits to the child; [and] to give consents to enlistments, marriages and other contracts requiring parental consent." The discerning reader will note the correlation between that definition and the definition of "custody" found in G. L. c. 119, § 21, for use in § 23.

---

[2] The appeal is not unusual in the sense that appointed counsel for the appellant and the amici have dissipated their efforts by attempting to put the department on trial for various administrative shortcomings which are said to frustrate the design of G. L. c. 119, § 1. Compare *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 584-586 (1981).

3. Similarly unavailing is the argument that G. L. c. 119, § 23(C), does not provide for an award of temporary custody. The argument defies common understanding (see, e.g., *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 575, 580; *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. 556, 557 [1984]) and overlooks the fact that ever since the enactment of St. 1978, c. 501, the provisions of G. L. c. 119, § 29 (which apply "[w]henever a child is before any court under" § 23[C]), have expressly authorized the "court [to] make such temporary orders as may be necessary to protect the child and society."

4. There is some color to the final argument advanced under § 23(C). The petition thereunder was filed several months prior to the enactment (by St. 1983, c. 517) of the provisions now found in the second through sixth sentences of § 29 which led to the adoption (effective December 1, 1984) of Uniform Practices of the Probate Courts Xb (3) and (6). Neither the mother nor the father was notified of or heard on the request for temporary custody. Counsel for the amici advances due process and equal protection arguments (the latter based primarily on a comparison of the provisions of G. L. c. 119, § 29, as then in effect, with those of G. L. c. 119, § 24) which, she says, should entitle the mother to some (undefined) form of relief with respect to the July 19, 1983, award of temporary custody to the department.

There are several difficulties with any such position. First, trial counsel was appointed for the mother in both cases on February 21, 1984. He did nothing by way of seeking relief from the temporary order during the period of more than a year which intervened between the date of his appointment and the date on which the trial of these matters commenced (February 25, 1985). See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 643-644 (1975). Compare *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. at 562-563 & n.12. When asked at the argument before us what due process or other constitutional right the mother had which could not have been vindicated in the course of the trial

of these petitions on the merits, counsel for the mother was unable to respond.

And for good reason. The only prerequisite to the department's maintaining a petition under G. L. c. 210, § 3(*b*), is that it have the "care or custody" of the child. " [T]here is nothing in the statute to suggest that custody means anything other than physical custody, whatever the original basis for it." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 642. "Under G. L. c. 210, § 3, a petitioner need not have custody of the child; rather § 3 confers standing to bring a petition on the department or [a licensed child care agency which has] either custody *or care* of the child (emphasis in original). [The child] was in the care of the department at the time the petition under G. L. c. 210, § 3, was filed and heard. Thus, the department had standing to initiate such a proceeding." *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 585. It was specifically held in that case that a petition under § 3(*b*) did not have to be dismissed by reason of the department's failure to notify the mother of earlier ex parte proceedings for temporary custody had under G. L. c. 119, § 23(C). *Id*. at 581-583.

The concluding sentence of the first paragraph of G. L. c. 210, § 3(*b*), provides that " [p]ending a hearing on the merits of a petition filed under this paragraph, temporary custody may be awarded to the petitioner." It was held in *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass. at 485-487, that a Probate Court had plenary jurisdiction in equity to determine and award custody whenever a petition is filed under § 3(*b*). "When the agency filed its petition under § 3 and asked the court to determine the child's best interests, it placed the custody issue before the court." *Id*. at 487.[3]

We think it clear that the failure to notify the mother of the proceedings for temporary custody did not deprive her of any

---

[3] It might be said that a petition under G. L. c. 210, § 3(*b*), supersedes an earlier petition under G. L. c. 119, § 23(C), but we need not go that far in order to dispose of the questions raised by the present appeal.

constitutional or other right of any substance which could not have been litigated and vindicated in the ensuing proceedings under G. L. c. 210, § 3(*b*). We think it equally clear from the opening statement of the mother's trial counsel that he shared our understanding.

5. The plan submitted by the department under the second paragraph of G. L. c. 210, § 3(*c*), proposed that the child ultimately be adopted by the foster parents with whom she had been placed when four days old. The mother, seconded by the father, nominated the paternal aunt and uncle as caretakers, with a view to a later adoption by them. The judge's rejection of the mother's plan and approval of the department's plan have given rise to two contentions by the mother, one legal in nature and the other factual.

The principal legal contention is that the mother's nomination of caretakers was, as matter of law, entitled to some sort of preference over the plan proposed by the department. There is no merit to any such contention. The second paragraph of § 3(*c*) requires the court, in determining the best interests of the child, to consider only two things. The first is "the ability, capacity, fitness and readiness of the child's parents or other person named in [G. L. c. 210, § 2] to assume parental responsibility." The second is "the plan proposed by the department or other agency initiating the petition." The only persons named in § 2 are a child above the age of twelve, a child's spouse (if any), "lawful parents," a surviving "parent," and the mother of a child born out of wedlock.[4] There is nothing in either § 2 or § 3(*c*) which would warrant an expansion of the meaning of "parent[s] " to include anyone other than a biological parent. We would have supposed that proposition clear ever since *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 16 Mass. App. Ct. 607, 607 (1983). Compare *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. at 560.

We all know that in determining the best interests of a child in cases arising under G. L. c. 210, § 3(*b*) and (*c*), judges

---

[4] The father of a child born out of wedlock can assert rights under the provisions of G. L. c. 210, § 4A. See the cases cited in note 1, *supra*.

depart from the stated requirements of (*c*) to consider parental nominations of caretakers in an extended family, just as they do in other types of child custody cases. See, e.g., *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 581-582, 583-584; *Freeman* v. *Chaplic*, 388 Mass. 398, 407-408 (1983); *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. at 561-562; *Petition of Boston Children's Serv. Assn. to Dispense with Consent to Adoption*, 20 Mass. App. Ct. 566, 573 (1985). But there is nothing in any of the relevant statutory provisions, in either Constitution, or in the decided cases which supports the notion that a biological parent's nomination in § 3(*b*) proceedings is entitled to any artificial weight in determining the best interests of the child. *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 256, 262-267 (1978). What is required in the circumstances, and all that is required, is the judge's even-handed, proper assessment of all the facts. *Id.* at 261, 262.

6. The parents have had such an assessment in this case. The judge rejected the mother's nomination of the paternal aunt and uncle for several reasons, each valid and each amply supported by the evidence. The child is thriving in her present environment, where she has been a single child. Any change in that environment would pose risks. The aunt and uncle, although excellent parents to their own children, are not sufficiently aware of the complications and adjustment problems that would be involved in a change of environment. They already have five children of their own, including one of comparable age to the child in question. Introduction of that child into the existing family would pose a serious potential for conflict. The father would know where the child is, and his behavior could well be detrimental to the best interests of the child. On at least one occasion in the past, when the father had been drinking, the aunt and uncle have had to secure a restraining order against the father to keep him out of their home.[5]

---

[5] The judge does not appear to have been influenced by the question of possible psychological bonding between the child and her foster parents. *See Petition of the Dept. of Pub. Welfare to Dispense with Consent to*

There is no genuine question as to the sufficiency of the evidence to warrant the findings made by the judge in determining that the best interests of the child lay in granting the prayers of both petitions. None of those findings can be pronounced plainly wrong. Any argument to the contrary proceeds on the erroneous premise that we retry these cases on cold transcripts of evidence.

*Decrees affirmed.*

*Adoption*, 383 Mass. at 591 n.16; *Custody of a Minor*, 389 Mass. 755, 768 (1983); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 118 (1984); *Care & Protection of Three Minors*, 392 Mass. 704, 716 n.18 (1984); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 16 Mass. App. Ct. at 609; *Petition of Boston Children's Serv. Assn. to Dispense with Consent to Adoption*, 20 Mass. App. Ct. at 567; *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 20 Mass. App. Ct. 689, 698-699 & n.8 (1985); *Custody of a Minor*, 21 Mass. App. Ct. 1, 7 (1985).