## Adoption of Dora.[1]

No. 99-P-2008.

Middlesex. May 10, 2001. - September 5, 2001.

Present: Porada, Kantrowitz, & Cohen, JJ.

*Adoption,* Care and protection, Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption, Care and protection of minor. *Minor,* Adoption, Care and protection.

In a proceeding to dispense with parental consent to adoption in which the Department of Social Services (DSS) and the parents advocated competing adoptive placements, the judge erred in leaving the choice of adoptive placement to the discretion of DSS subject only to review by the adoption judge under G. L. c. 210, § 6, and this court remanded the case to the trial court to take additional evidence, if necessary, and to make a determination pursuant to G. L. c. 210, § 3(*c*), as to which adoption placement was in the child's best interests. [474-478]

In a proceeding to dispense with parental consent to adoption, clear and convincing evidence supported the judge's findings and conclusion that the parents were currently unfit to care for their child. [478-479]


PETITION filed in the Waltham Division of the District Court Department on August 20, 1997.

The case was heard by *Margaret S. Fearey,* J.

*Susan F. Drogin* for the mother.

*Daniel R. Katz* for the father.

*Ann Balmelli O'Connor* for Department of Social Services.

*Linda Medeiros* for the child.

COHEN, J. The mother[2] and father of a minor child,[3] whom we call Dora, appeal from a decree of the Waltham District Court

---

[1]The name is fictitious.

[2]Shortly before the release of this opinion, we were informed that the mother has died. Because the father raised essentially the same issues, this development does not affect our decision.

[3]When these proceedings began, the child was approximately eighteen months old.

adjudicating Dora to be in need of care and protection, pursuant to G. L. c. 119, § 26, and dispensing with the need for the parents to consent to her adoption, pursuant to G. L. c. 210, § 3. The parents challenge the correctness of the judge's findings and conclusions as to parental unfitness. They also contend that the trial judge erred by failing to decide, in conjunction with issuing the decree dispensing with the need for parental consent, which of two potential adoption placements is in the child's best interests. While we affirm the trial judge's determination of parental unfitness, we agree with the parents that before entering the termination decree the judge was required to decide which of the two adoption alternatives is in the best interests of the child. Accordingly, we remand the case to the District Court to enter findings of fact and conclusions of law on that issue.

1. *Proceedings below.* On January 13, 1999, a hearing commenced on a petition by the Department of Social Services (DSS) alleging that Dora, born in July, 1997, was in need of care and protection, and seeking termination of the parents' right to notice of and consent to her adoption. On June 30, 1999, a judge of the District Court found the parents unfit, adjudicated Dora in need of care and protection, awarded permanent custody of her to DSS, and dispensed with the need for parental consent to her adoption. The trial judge entered written findings of fact and conclusions of law on October 6, 1999. The judge found, inter alia, that "[t]he Department's plan for [Dora] is that she be adopted by her foster parents . . . although it is investigating the suitability of placing [Dora] with her paternal uncle . . . in California;" that the parents proposed two alternative plans for Dora if she is not to be returned to their care, one of which is that Dora be placed with the uncle being considered by DSS[4]; and that both Dora's uncle and her foster parents are "capable of being loving, nurturing and competent adoptive parents for [Dora]."

The trial judge did not, however, decide which of the potential adoption placements was in Dora's best interests. Instead, the

---

[4]The parents' other alternative plan was that Dora be placed with the mother's aunt. The trial judge did not endorse this option, and it is not pressed by the parents on appeal.

judge stated that she had insufficient evidence to determine whether, at this stage in her development, Dora would be harmed by being uprooted were she to be placed with her uncle in California and left the final determination of adoptive placement to DSS. In her conclusions of law, the judge expressed the opinion that both placement possibilities were "excellent" and reiterated that it would be up to DSS to determine which option was in Dora's best interests, subject to review by the adoption court.[5]

Ultimately, the judge found that there was clear and convincing evidence that (1) the parents were unfit; (2) the parents were likely to remain unfit; (3) Dora's best interests were served by granting DSS permanent custody pursuant to G. L. c. 119, § 26, and dispensing with the parents' consent to Dora's adoption, guardianship or other placement, pursuant to G. L. c. 210, § 3; and (4) "the Department's plan for [Dora] is in her best interests."[6] The judge adjudicated Dora to be in need of care and protection, committed her to the custody of DSS, and ordered that a decree issue dispensing with the parents' consent to, or notice of, Dora's adoption.[7]

2. *The adoption plan.* Pursuant to G. L. c. 210, § 3(*c*), in addition to considering the issue of parental unfitness, the judge must consider the adoption plan proposed by DSS before terminating parental rights.[8] *Adoption of Vito*, 431 Mass. 550, 568 n.28 (2000). The judge also must consider parental nomina-

---

[5]The judge wrote: "[T]he Department has presented a plan to the court proposing the [foster parents] as [Dora's] adoptive parents. However, at the time of trial, it was also considering [Dora's paternal uncle] as an adoptive parent. [Dora] is fortunate to have two such excellent possibilities. As noted above, the court does not have sufficient evidence before it, particularly with regard to [Dora's] current emotional state, to determine the best plan for [Dora] as between these two possibilities. The decision as to adoptive placement is thus left to the Department with review of that decision by the adoption court."

[6]In light of the judge's subsidiary findings and conclusions of law, this ultimate finding must be read as referring to DSS's plan as a whole, which was to have Dora adopted by *either* her foster parents *or* by her paternal uncle, and not simply to potential adoption by the foster parents.

[7]Subsequently, the judge granted the father's motion to stay the decree dispensing with consent to adoption, pending appeal.

[8]The statute provides in relevant part that "[i]n determining whether the best interests of the child will be served by issuing a decree dispensing with

tions of caretakers and then determine which placement will serve the best interests of the child. *Adoption of Hugo*, 428 Mass. 219, 226 & n.9 (1998), cert. denied, *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 22 Mass. App. Ct. 62, 68-69 (1986). In so doing, the judge is not to afford any particular weight to either the parents' or DSS's plan. *Adoption of Hugo*, *supra* at 226 & nn.8 & 9; *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, *supra* at 69.

The judge's obligation to "consider" a plan involves much more than simply examining it. The judge must perform a "careful evaluation of the suitability" of the plan and must "meaningfully . . . evaluate" what is proposed to be done for the child. *Adoption of Lars*, 46 Mass. App. Ct. 30, 31 (1998), *S.C.*, 431 Mass. 1151 (2000) (citations omitted). If the plan is not adequate, the judge may reject it and deny DSS's petition. *Adoption of Vito*, *supra* at 568. In cases where the parents have offered a competing plan, the judge must assess the alternatives and, if both pass muster, choose which plan is in the child's best interests, however difficult that choice may be. See *Adoption of Hugo*, *supra* at 220 (affirming trial judge's "heart-wrenching" decision to choose alternative plan proposed by parents over plan proposed by DSS).

The present case is one in which DSS and the parents advocated competing plans, even though DSS's plan included, as one of two potential options, one of the placements supported by the parents. Therefore, just as in *Hugo*, it was necessary for the trial judge to evaluate both potential adoptive placements to assess their suitability, and finally, to decide which placement is in Dora's best interests. Indeed, even if the parents had not suggested or supported a particular placement, the trial judge still had the responsibility to meaningfully evaluate what

the need for consent . . . the court shall consider the ability, capacity, fitness and readiness of the child's parents or other person . . . to assume parental responsibility, and . . . shall consider the plan proposed by the department or other agency initiating the petition. In making the determination, the health and safety of the child shall be of paramount, but not exclusive concern." G. L. c. 210, § 3(*c*), as appearing in St. 1999, c. 3, § 17.

DSS proposed to do for the child. See *Adoption of Stuart*, 39 Mass. App. Ct. 380, 393 (1995).

In this case, meaningful evaluation of the plan required the judge to assess both adoptive options and to approve of one or disapprove of both. If the court lacked sufficient evidence to make an appropriate determination, the proper course was for the judge, after addressing the question of the fitness of the biological parents, to suspend proceedings and then, at a later hearing, to take additional evidence to determine which plan would serve the best interests of the child, before entering a decree under G. L. c. 210, § 3. It was not appropriate, however, to leave the choice of adoptive placement to the discretion of DSS subject only to review by the adoption judge under G. L. c. 210, § 6.

Review under section 6 by the adoption judge is an inadequate substitute for the thorough review which section 3(*c*) mandates. By its terms, section 6 review is limited to determining whether the petitioning adoptive parents are suitable candidates to raise, support, and educate the child.[9] This section does not provide an opportunity for examining and adjudicating the relative merits of more than one adoption alternative. Furthermore, by the time of the section 6 hearing, the rights of the biological parents to notice and consent already have been terminated by the section 3 decree, and the parents no longer have the right to participate in any proceedings affecting the custody, guardianship, adoption, or other disposition of their child. See *Adoption of Donald*, *post* 901 (2001) (biological mother had no right to participate in posttermination decree permanency hearings). Thus, unless the biological parents' proposed alternative plan for adoption is considered before a decree issues under section 3, they may lose the opportunity to advocate their point of view. Such a result would be inconsistent with the principle that parental nominations of caretakers are to be considered in cases

[9]Section 6 provides in relevant part: "If the court is satisfied of the identity and relations of the persons, and that the petitioner is of sufficient ability to bring up the child and provide suitable support and education for it, and that the child should be adopted, it shall make a decree [that thereafter a legal parent-child relationship shall exist between the child and the petitioner and the legal relationship between the child and his or her biological parent shall be terminated]." G. L. c. 210, § 6.

of this nature. See *Adoption of Hugo*, 428 Mass. at 226 & n.9; *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 22 Mass. App. Ct. at 68-69.

DSS has expressed concern that requiring the judge to make the election in the present case will prevent the future use of so-called recruitment plans. This concern is ill-founded. We do not underestimate the difficulty often faced by DSS in locating an appropriate adoptive placement. Accordingly, both this court and the Supreme Judicial Court have recognized that a decree under G. L. c. 210, § 3(*c*), may issue even if a specific adoptive family has not been identified, as long as the adoption plan provides sufficient "information with respect to the 'prospective adoptive parents and their family environment so that the judge may properly evaluate the suitability of the department's proposal.' " *Adoption of Vito*, 431 Mass. at 568 n.28, quoting from *Care & Protection of Three Minors*, 392 Mass. 704, 717 (1984). See *Adoption of Lars*, 46 Mass. App. Ct. at 31. In other words, an adequate recruitment plan will define in some detail the characteristics of the home which is being sought for the child. See *id.* at 32. Here, however, there was no singular definition of what was contemplated for Dora. Rather, the court was presented by DSS with two starkly different potential placements.[10] Meaningful consideration of the plan necessarily entailed an evaluation of which alternative was in Dora's best interests. Accordingly, this matter must be remanded to the

---

[10]The uncle, who testified at trial, resides in Los Angeles, is in his early thirties, is unmarried and, at the time of trial, was sharing a three-bedroom home with a male friend. The uncle is employed as a financial advisor managing assets for individuals and pension plans. The judge found that he is loving and committed to Dora and has visited her frequently. In anticipation of possibly becoming Dora's caretaker, he completed an eight-week parenting class sponsored by a family services organization, found a pediatrician, and developed a specific plan for parenting Dora using day care near his workplace. The foster parents live in a five-bedroom home in western Massachusetts and have two other children: a biological daughter and an adopted son. Dora has been in their care since first coming into DSS's custody, except for a brief period when DSS attempted to reunite her with her biological parents. The foster mother has been a full-time family daycare provider for many years and has an associate's degree in early childhood education. The foster father has been employed as a truck driver for twenty-four years. The foster parents envision an open adoption, which would allow Dora to have occasional visits with her parents, her uncle and her maternal aunt.

District Court to take additional evidence, if necessary, and make a determination as to the appropriate adoption placement for Dora.

3. *Parental unfitness.* "In proceedings to dispense with parental consent to adoption, the judge must make specific and detailed findings demonstrating that close attention has been given to the evidence. These subsidiary findings must be proved by a fair preponderance of the evidence and will not be disturbed unless clearly erroneous." *Adoption of Quentin*, 424 Mass. 882, 886 (1997) (citation omitted). *Adoption of Larry*, 434 Mass. 456, 462 (2001). Taken together, the subsidiary findings "must then prove clearly and convincingly that the parents are currently unfit to provide for the welfare and best interests of their [child]." *Adoption of Quentin, supra*, at 886. See *Adoption of Larry, supra* at 470-471.

The father contends that certain of the judge's findings relating to the mother's and father's parenting skills, their attendance at couples' counseling, and the father's attendance at an anger management program, are clearly erroneous. The mother argues that the trial judge's conclusions on seven of the factors listed in G. L. c. 210, § 3(c), are not supported by a preponderance of the evidence. We disagree with both the mother's and father's contentions and conclude that the lower court's findings and conclusions are appropriately supported and that parental unfitness was demonstrated by clear and convincing evidence.

There was considerable evidence that the parents, both of whom had significant intellectual deficits, were overwhelmed by the normal responsibilities of raising and caring for a young child and were unable or unwilling to carry out their parental responsibilities. When Dora, now four years old, was an infant, the parents consistently failed to provide for her most basic needs, including her needs for stimulation and attachment. The parents also placed Dora at physical risk by failing to take normal safety precautions when she became mobile and failing to heed medical advice when Dora became ill.

Over the course of their involvement with DSS, the parents received regular in-home services from several different organizations. The services were specifically designed to teach the parents in a "hands-on" way, through modeling and repeti-

tion, how to meet Dora's needs for nutrition, stimulation, medical care, security, safety and "bonding." Despite these services, the parents did not improve their parenting skills sufficiently to alleviate well-founded concerns by service providers about Dora's safety and well-being.

Moreover, Dora thrived while under the care of her foster parents, but deteriorated when returned to parental care on a trial basis. Only after going back to her foster parents did she resume being alert and engaged. Along with other evidence of unfitness, the trial judge was entitled to take into account the child's condition and over-all adjustment while in placement with her foster parents as compared with those periods when she was under the care of her biological parents. *Petition of the Catholic Charitable Bureau to Dispense with Consent to Adoption*, 395 Mass. 180, 187 (1985). Under the circumstances, neither DSS nor the court was required to risk serious harm to Dora by attempting to reunite her with her biological parents. See *Adoption of Katharine*, 42 Mass. App. Ct. 25, 32-33 (1997).

4. *Conclusion.* We affirm the decree insofar as it adjudicates Dora in need of care and protection under G. L. c. 119, § 26, but vacate that portion of the decree dispensing with parental consent to adoption. We remand the action to the District Court for the sole purpose of approving or disapproving the adoption plan, after an evidentiary hearing, as a precondition to entry of a decree under G. L. c. 210, § 3. If any party wishes to appeal from the judge's decision, such an appeal may be brought before the Appeals Court for expedited review by the same panel.

*So ordered.*