The mother appeals from decrees of the Juvenile Court finding her unfit to parent Dara and Adam, and terminating her parental rights.[3] She principally argues that the adoption plan presented by the Department of Children and Families (department) was not sufficiently detailed. She also contends that the judge erred in failing to order sibling visitation between the two children and their older sibling, Thomas.[4] We discern no error, and affirm.
Background. We summarize briefly the findings of fact entered by the judge, which we adopt absent clear error. The mother has a significant history of substance abuse. In December, 2013, the mother was incarcerated for violating her probation after relapsing on heroin. After her release, she became pregnant, and admitted "that she used heroin 'a couple of times' while pregnant." The mother was incarcerated once again in February, 2014, after a positive drug test, and she received treatment for both her drug addiction and pregnancy during her incarceration. She was released in May, 2014.
The father also has a history of substance abuse and was incarcerated from January, 2013, to January, 2014, as a result of several probation violations stemming from a marijuana cultivation conviction. In April, 2014, he relapsed on heroin and sought suboxone treatment. The father was uncooperative with the department throughout the case, and as a result the department had little information concerning the father's whereabouts or sobriety.[5]
The children are twins, born in September, 2014. The department came into contact with the family soon after the children's birth, when a mandated reporter filed a G. L. c. 119, § 51A, report (51A report) concerning the mother's and father's substance abuse history and, in particular, the mother's use of heroin while she was pregnant.[6] The department supported the allegations in the 51A report and began to provide services to the family. Meanwhile, the mother, father, and the children moved into the paternal grandmother's home. However, the paternal grandmother soon asked the father to leave at the recommendation of the family's social worker, and then asked the mother to leave the home in December, 2014, due in part to her suspicion that the mother was allowing the father to visit when the paternal grandmother was away.
The department encouraged the mother to seek a shelter placement for herself and the children, and for a short time the mother and children lived with the mother's uncle. However, the mother and children then moved into the maternal grandfather's home -- despite the department's previous warning to avoid living there over concerns about safety and substance abuse by the other residents of that home. On March 12, 2015, a new 51A report was filed alleging that the mother had recently asked the father for suboxone -- suggesting that the mother had relapsed once again. While investigating that 51A report, the department learned that the mother and children were living with the maternal grandfather and conducted an emergency removal of the children, placing them in a foster home.[7]
After the children were removed from the mother's care, the mother was inconsistent with following the service plan the department developed for her. She was late to scheduled visits with the children, was inconsistent in meeting with her parent aide, and failed to provide the department with verification of her sobriety. The mother met with her social worker in August, 2015, but missed visits in July and September. The mother's last visit with the children was in July, 2015, and her subsequent lack of regular contact with the department prevented the department from further determining her compliance with her service plan. By December, 2015, the department was unable to determine the mother's whereabouts, and the children's goal was changed from reunification to adoption.
The trial concerning the parents' parental rights was held on September 13, 2016. Neither the mother nor the father attended the trial, though counsel for the mother appeared on her behalf. At the conclusion of the trial, the judge determined that both the mother and father are unfit and that it was in the best interests of the children for parental rights to be terminated.
Discussion. General Laws c. 210, § 3 (b ), requires the department to "identify, recruit, process and approve a qualified family for adoption." The judge is then required to consider that plan and determine whether it serves the best interests of the child. G. L. c. 210, § 3 (c ). Such a plan "need not be fully developed to support a termination order; it need only provide sufficient information about the prospective adoptive placement 'so that the judge may properly evaluate the suitability of the department's proposal.' " Adoption of Willow, 433 Mass. 636, 652 (2001), quoting Adoption of Vito, 431 Mass. 550, 568 n.28 (2000). The identification of a specific adoptive family is not required if the judge can otherwise properly make this evaluation. See Adoption of Dora, 52 Mass. App. Ct. 472, 477 (2001).
Here, though the department's adoption plan lacked certain details (including, in particular, identification of a specific proposed adoptive placement), there was sufficient information to allow the judge to make a determination whether it furthered the best interests of the children. The children have no special needs that would require discussion of a special housing situation or adoptive placement. The department indicated that the children would be placed together in the same adoptive home and that the department would seek a referral for adoption by recruitment. Further, although the department had not yet identified an adoptive resource for the children, the children's foster family had expressed interest in adopting them, and therefore the department was in the process of assessing whether the foster family would be an appropriate adoption placement.[8] See Adoption of Lars, 46 Mass. App. Ct. 30, 31-32 (1998).
As to the mother's remaining claims concerning the adoption plan, we likewise discern no error. In cases such as this, adoption by recruitment is a valid plan that can be in the best interests of a child, and the department's efforts to identify a proper placement in the future does not equate to an impermissible delegation of a judge's statutory duty to determine what is in the child's best interests. See Adoption of Paula, 420 Mass. 716, 722 n.7 (1995) ("A fully developed adoption plan, while preferable, is not an essential element of proof" in termination of parental rights). Additionally, the judge's findings concerning the adoption plan were sufficient to demonstrate that she paid careful attention to the evidence. As the adoption plan was adoption by recruitment, there was not yet an adoptive family about which the judge could make specific factual findings. The adoption plan stated that the children's foster family had shown interest in adopting the twins, and therefore -- in the event the foster family was approved by the department -- the judge properly made several findings describing how the children exhibited a close bond with the foster family and had adjusted well to living in the foster home.
If it is "reasonable and practical" and in the best interests of the child, a trial judge must order visitation between siblings who are in the care of the department. G. L. c. 119, § 26B (b ). A judge has broad discretion in ordering visitation or leaving visits to the judgment of the child's legal guardian. See Adoption of Ilona, 459 Mass. 53, 66 (2011). At trial, the judge indicated that she was inclined to order some type of sibling visitation. However, counsel for the children was concerned that there may be interaction between the parents and the children posttermination if sibling visitation was ordered and the parents regained custody of Thomas. Therefore, to allow the children's adoptive family the flexibility to deal with such a situation, the judge left the details of sibling visitation up to that family.[9] This was not an abuse of discretion. See id.
Decrees affirmed.

The mother does not challenge the judge's determination that she is unfit to parent the children. The judge also found the father unfit and terminated his parental rights; he did not appeal.

Thomas remains under permanent guardianship of the paternal grandmother and is not a subject of this appeal. The department has raised no question concerning the mother's standing to challenge the treatment of sibling visitation with Thomas (who is not a party to these proceedings), and we do not consider the question.

The department's last contact with the father was by telephone in December, 2014.

The children's toxicity screens at birth were negative.

The children were originally placed in separate foster homes, but were reunited in their current foster home on June 10, 2015.

At oral argument, counsel for the department indicated that since the time of trial, the foster family had been approved as an adoption resource for the children. See Custody of Deborah, 33 Mass. App. Ct. 913, 913-914 (1992) (although developments after termination trial are not reviewed on appeal, it is vital for counsel to inform appellate court as to issues which may make appeal moot). See also Adoption of Terrence, 57 Mass. App. Ct. 832, 840-841 (2003).

Thomas remains free to bring a petition under G. L. c. 119, § 26, in the event he is denied visitation in circumstances he believes are inappropriate.