NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-507

ADOPTION OF ILEE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Juvenile Court judge found the mother unfit to parent her child, Ilee, terminated her parental rights, and concluded that adoption by the child's foster parents would be in the child's best interests.  On appeal, the mother does not challenge any of the judge's findings of fact but argues that the judge erred and abused her discretion by failing to support kinship placement with the maternal grandmother, by failing to make certain required findings, by finding that the Department of Children and Families (department) made reasonable efforts toward kinship placement and reunification, and by

---

[1] A pseudonym.  The names of Ilee's siblings are also pseudonyms.

failing to accommodate the mother's mental health conditions at trial.  We affirm.[2]

Background.  "We summarize the relevant facts and procedural history as set forth in the judge's decision and as supported by the record, reserving other facts for later discussion."  Care & Protection of Vick, 89 Mass. App. Ct. 704, 705 (2016).

1.  Department involvement.  The mother has four children, all of whom have been involved with the department.  Ilee is the mother's youngest child.  The mother's first child, Bryce, is in the custody of his maternal grandmother through a guardianship proceeding.  He was removed from the mother's care due to "lack of supervision, substance abuse, [the mother's] untreated mental health, as well as domestic violence between [the] [m]other and [the] [m]aternal [g]randmother."  The department remains involved with the maternal grandmother to assist with the management of Bryce's violent and volatile behavior.

In October 2018 the mother gave birth to twins, Annice and Kate.  The mother tested positive for marijuana during her pregnancy.  Kate died when she was three weeks old; the cause of death was determined to be sudden infant death syndrome.

_____

[2] After trial the father was found unfit, and his parental rights were terminated.  The father did not appeal from the decree.  The father died in November of 2024.

2

Following Kate's death, the department was unable to locate the mother for a period of time. Ultimately, the department took custody of Annice pursuant to an emergency removal under G. L. c. 119, § 51B (c), on November 8, 2018, and the mother's parental rights as to Annice were terminated in 2022.

Ilee was born prematurely in December 2022 and was transferred to a special care nursery immediately for further medical treatment. The mother tested positive for marijuana in the late stages of her pregnancy and at birth, despite claiming that she had stopped using marijuana when she learned of her pregnancy. Ilee tested positive for fentanyl at birth.[3] A G. L. c. 119, § 51A, report was filed citing concerns related to the family's extensive history with the department. The mother had informed the department that she and Ilee would be moving to her sister's house upon Ilee's discharge, but that plan was not viable, as the home lacked a crib and bassinet. The maternal grandmother had informed the department that the mother and Ilee would be moving into her home but within weeks of Ilee's birth the mother was involved in an altercation with the maternal grandmother's landlord and was issued a no-trespass order for the property at which the maternal grandmother lived. During

---

[3] The judge noted that "[i]t [was] unclear whether the presence of fentanyl was due to medication dispensed during birth."

3

Ilee's hospitalization, the mother visited Ilee only two to three times and did not maintain consistent contact with the department. Following an investigation, the department found that Ilee would be at risk of abuse and neglect if she were released into the mother's care and initiated a care and protection proceeding on January 5, 2023.

2. _The mother's unfitness and the termination of her parental rights_. After trial, the judge issued her memorandum of decision, and she subsequently made extensive findings and rulings as to the mother's fitness and Ilee's best interests. The judge found that the mother consistently denied all allegations of abuse and neglect relating to each of her children and refused to cooperate with the department or engage with offered services. The mother was chronically homeless, and when housed, refused home visits and would not provide the department with her address. At the time of trial, the mother continued to refuse to provide her address, and the judge had "no confidence that [the mother's] housing instability [would] improve should Ilee be returned to [her] care."

The judge found that the mother has a history of untreated mental health concerns: the mother is unable to regulate her moods, refuses to engage in mental health evaluations or treatment for her multiple diagnoses, and chooses to self-medicate with marijuana, resulting in "volatile and hostile

4

behavior towards her family members . . . and [d]epartment workers." Describing the mother's conduct during the trial, the judge found that the mother "consistently demonstrated that she is unable to control her contempt and disrespect for the [c]ourt and the [d]epartment, both by storming out of the court room and muttering expletives." The mother had no plan to care for Ilee's complex needs, including medical issues that require oversight and regular visits to multiple specialists. The judge found that Ilee needed a "stable vigilant caretaker" to ensure her safety, and that the evidence established that the mother was not capable of caring for Ilee, in part because she is "unable to care for her own mental health." For all these reasons, the judge concluded, consistent with clear and convincing evidence, that the mother was unfit, and that termination of the mother's parental rights was in Ilee's best interests.

The department advanced a plan for Ilee to remain with her preadoptive family. The mother offered a competing plan of guardianship with the maternal grandmother. The judge evaluated the competing plans and concluded that it was in Ilee's best interests to be placed with her preadoptive family, pursuant to the department's plan.

Discussion. 1. Kinship placement with the maternal grandmother. After determinations of parental unfitness and

5

that it is in the best interests of the child to permanently terminate the parent-child relationship, see Adoption of Ramona, 61 Mass. App. Ct. 260, 265 (2004), the judge is required to assess all proposed placements for the child, including the department's plan and the plans presented by any other party. See Adoption of Dora, 52 Mass. App. Ct. 472, 474-475 (2001). See also G. L. c. 119, § 26; G. L. c. 210, § 3 (c). "In choosing among placement plans, it falls to the sound discretion of the trial judge to determine what is in the best interests of the child, and our review on appeal is one of 'substantial deference.'" Adoption of Bianca, 91 Mass. App. Ct. 428, 434 (2017), quoting Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).

The mother argues that the judge erred by not properly evaluating the maternal grandmother's suitability as a kinship placement. However, the judge made significant findings regarding suitability, supported by the record, including findings about the maternal grandmother's relationship with the mother, the care Bryce needed, and the risk posed to Ilee, a toddler. The judge found that the maternal grandmother could not control Bryce's volatile behavior and "minimized" that conduct despite her awareness of Bryce's reliance on the assistance of multiple services to support his mental health

6

diagnoses.  Further, the judge found that there was no indication that the maternal grandmother would limit unsupervised contact between the mother and Ilee or be able to "control [the] [m]other's irascible and volatile behavior in the home."  We discern no error in the judge's evaluation of the maternal grandmother as a placement, and it was not an abuse of discretion for the judge to conclude that it was in Ilee's best interests to remain with her preadoptive family.

Relatedly, the mother argues that the facts supporting the findings regarding the maternal grandmother's care of Bryce are stale.  We conclude that even if there have been no new reports to the department, police calls, or department supported concerns regarding Bryce, the judge was within her discretion to conclude that it was not in Ilee's best interests to be placed in a home where the caretaker had historically struggled to control a volatile older child and to maintain boundaries with the mother, thereby placing Ilee at risk.[4]  See Adoption of Xarissa, 99 Mass. App. Ct. 610, 620 (2021) ("The judge's determination that a particular plan is in the child's best

_____

[4] In her briefs, the mother argued that the judge was required by G. L. c. 119, §§ 26 and 29C, to make explicit statutory findings regarding the maternal grandmother's suitability as a kinship placement.  As the mother's attorney (who was not the author of the briefs) properly conceded at oral argument, this statutory argument is without merit.

7

interests presents a classic example of a discretionary decision to which we accord substantial deference" [quotations and citation omitted]).

2. Reasonable efforts. The mother argues that the judge erred in her conclusion that the department satisfied its obligation to make reasonable efforts toward reunification prior to terminating her parental rights, and that the department was required to make reasonable efforts to support a kinship placement identified by a parent.[5]

"The department is 'required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties.'" Adoption of West, 97 Mass. App. Ct. 238, 241 (2020), quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). "When committing a child to the custody of the department or terminating parental rights, a judge must determine whether the department has complied with its duty to make 'reasonable efforts . . . to prevent or eliminate the need for removal from

---

[5] At oral argument, the mother argued for the first time that the department failed to follow its policies by informing the maternal grandmother that she was not eligible to apply to be a kinship placement. We deem this argument waived. See Commonwealth v. Gray, 423 Mass. 293, 296-297 (1996) (claims "not supported by reasoned argument or citations" do not rise to level of appellate argument and need not be considered); Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

the home.'"  Adoption of Ilona, 459 Mass. 53, 61 (2011), quoting G. L. c. 119, § 29C.  "A judge's determination that the department made reasonable efforts will not be reversed unless clearly erroneous."  Adoption of West, supra at 242.

We discern no error in the judge's finding that the department made reasonable efforts to work towards the reunification of the mother with Ilee.  The department tried to assist the mother to achieve the goals in her action plan to strengthen her "parenting abilities, and to promote the child's safety, stability, and permanency."  Contrary to the mother's further argument, while G. L. c. 119, § 29C, and G. L. c. 210, § 3, imposed duties on the department to make reasonable efforts to restore the child to her care before seeking termination of her rights, they did not require the department to make "reasonable efforts" to support a kinship placement for a child. And even if the department had a duty to prioritize and support the kinship placement with the grandmother, the mother's claim of inadequate services and efforts cannot be raised for the first time on appeal.  See Adoption of Gregory, 434 Mass. 117, 124 (2001).  Moreover, even if the department failed in its duties, the judge was not precluded from making any order conducive to the child's best interests.  See Adoption of West, 97 Mass. App. Ct. at 242.

9

3. Accommodation of the mother's mental health conditions. The mother argues that the judge failed to accommodate her mental health conditions during the trial and that because of that failure, she was rendered unable to meaningfully participate in the trial, thus violating her due process rights and prejudicing her ability to argue for kinship placement with the maternal grandmother. We are not persuaded.

At trial, the mother did not request a competency hearing or raise the issue of her competency. While the mother's behavior at trial was unpredictable, and, at times, hostile, there is no indication, and indeed she does not argue, that she was incompetent. See Adoption of Kirk, 35 Mass. App. Ct. 533, 537 (1993) (fact of mental illness does not, without more evidence, overcome presumption that individual is competent to manage own affairs). To the contrary, the mother had prior experience with care and protection proceedings, and the mother's testimony and her participation in the termination of parental rights trial indicate that she fully understood the nature of the proceedings, including the department's request to terminate her parental rights as to Ilee, the department's plan for Ilee to stay with her preadoptive family, and the department's opposition to a kinship placement with the maternal grandmother.

10

Moreover, despite the mother's hostile and inappropriate behavior over the course of the trial, the judge encouraged the mother to answer the questions, allowed her multiple breaks, and ignored the mother's insulting comments directed at counsel and the judge, allowing the mother the opportunity to participate fully in the proceedings. The mother presented evidence and argued that for several reasons Ilee should be placed with the maternal grandmother. Both the mother and the maternal grandmother testified, and the mother's counsel, consistent with his client's wishes, argued for the placement in her closing argument after presenting evidence in support of kinship placement. In her conclusions of law, the judge properly noted that she was required to "consider parental nominations of caretakers," Adoption of Dora, 52 Mass. App. Ct. at 474-475, and affirmatively stated that the mother had "advanced a competing plan of guardianship with maternal grandmother." As noted above, the judge fully considered the kinship placement with the maternal grandmother, and after making specific findings supporting the conclusion that placement with the maternal grandmother was not suitable, properly determined that it was in

11

Ilee's best interests to remain with her preadoptive family.[6]

Decree affirmed.

By the Court (Massing, Hand & Allen, JJ.[7]),

_Paul Little_

Clerk

Entered:   March 2, 2026.

---

[6] Having found no error, we need not address the mother's cumulative and harmless error arguments.

[7] The panelists are listed in order of seniority.