ADOPTION OF ZANDER
(and three companion cases[1]).

No. 12-P-491.

Essex. December 4, 2012. - February 27, 2013.

Present: KANTROWITZ, KATZMANN, & HANLON, JJ.

*Adoption,* Visitation rights. *Minor,* Adoption, Visitation rights. *Parent and Child,* Adoption.

A Juvenile Court judge did not abuse his discretion in accepting a plan of adoption put forth by the Department of Children and Families rather than the biological father's plan, where the judge had legitimate concerns about the latter plan, in that the judge reasonably doubted the putative adoptive parent's ability to prohibit any visitation between the biological father and the child; further, the judge did not arrive at his decision prematurely. [364-365]

A Juvenile Court judge did not abuse his discretion in declining to issue a postadoption parental visitation order, where neither the father nor the mother had developed a significant attachment with the child; where, with respect to the mother, the judge found it unnecessary to issue a visitation schedule, given the adoptive family's expressed desire to allow visitations consistent with the child's best interests; and where, with respect to the father, the judge received sufficient evidence to determine that the father was unfit to interact with the child. [365-366]

A Juvenile Court judge did not abuse his discretion in ordering six scheduled visits per year between the mother and three of her children who had been placed in adoptive families, where the judge balanced the children's bond with their biological mother with the fact that a more extensive visitation schedule could interfere with the relationship between the adoptive parents and the children, and where the adoptive parents could arrange for additional visits if they find that such visits are in the best interests of the child. [366]

This court remanded to the Juvenile Court an adoption plan for four children, to provide a schedule for posttermination and postadoption sibling visitation. [366-367]

PETITIONS filed in the Essex County Division of the Juvenile Court Department on September 5, 2008.

---

[1]Adoption of Amy; Adoption of Marjorie; and Adoption of Sam. The children's names are pseudonyms, as are the names of the adoptive parents.

The cases were heard by *Joseph F. Johnston*, J.

*Michael S. Penta* for the mother.

*Ann V. Crowley* for Zander & others.

*Daniel R. Katz* for the father.

*Timothy J. Casey*, Assistant Attorney General, for Department of Children and Families.

*Debra Perrotta Dow* for Sam.

KATZMANN, J. Marjorie, Amy, Zander, and Sam are siblings. They have the same biological mother. Marjorie and Zander were adopted by the biological mother's sister and husband. Amy was adopted by the Fisher family, and Sam was adopted by the Williams family.[2] This appeal arises from the adoption plan for Sam and from the visitation determinations by a judge of the Juvenile Court.

Different parties to the adoption appeal separate aspects of the decrees: (1) Sam's biological father[3] and mother appeal the judge's decision to accept the Department of Children and Families (DCF) adoption plan rather than the biological father's plan and the judge's decision to deny them postadoption visits with Sam; (2) Marjorie, Amy, and Zander (the three oldest children) and the mother argue that the judge did not order sufficient visitation between the above children and the mother; and (3) the three older children and the mother also argue that the judge committed error in refusing to issue an official sibling visitation schedule. We affirm in part and remand on the issue of sibling visitation between the three oldest children.

*Discussion.* 1. *Adoption plan for Sam.* The biological parents argue that the judge abused his discretion when he accepted the DCF adoption plan over the biological father's plan. In arriving at such a decision, the judge properly considered the best interests of Sam. This court may only review such a decision for abuse of discretion or clear error of law. *Adoption of Hugo*, 428 Mass. 219, 225 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999).

---

[2]There is no biological relationship between the children and the Fisher and Williams families.

[3]Sam's biological father has no biological relationship with the other children in issue.

As a general matter, the trial judge is charged with evaluating each of the adoption plans. *Adoption of Dora*, 52 Mass. App. Ct. 472, 474-475 (2001). Ultimately, the judge accepted the DCF plan for the Williams family to adopt Sam. The biological father's plan was for his ex-girlfriend's daughter, Patricia Gray,[4] who is thirty years old, to adopt the child. The judge had legitimate concerns about Gray adopting Sam — namely, Gray's close relationship with the biological father, as she allows him to babysit her own son. Given that the judge specifically prohibited any visitation between the biological father and Sam, the judge reasonably doubted Gray's ability to comply with this provision.

Furthermore, the biological father argues that the judge arrived at his decision prematurely because Margaret Grant, a licensed independent clinical social worker, did not finish her home evaluation of Gray. However, neither biological parent requested a continuance of the trial to complete the home study or objected to the conclusion of the trial before completion of the home study. Grant, moreover, gave extensive testimony about her preliminary home study. The judge did not commit error in making a decision prior to the completion of the home study, because he reasonably determined that between Gray's and Grant's testimony, he already had sufficient information to make his decision. Cf. *Adoption of Cadence*, 81 Mass. App. Ct. 162, 172-174 (2012).

2. *Postadoption parental visitation in regard to Sam.* Sam's biological parents argue that the judge issued an improper post-adoption parental visitation order for Sam. In issuing such an order, the judge must determine that "[o]nce it [has been] established that a parent is unfit, the decision whether to grant postadoption [or posttermination] visits must be left to the sound discretion of the trial judge." *Adoption of Terrence*, 57 Mass. App. Ct. 832, 839 (2003), quoting from *Adoption of John*, 53 Mass. App. Ct. 431, 439 (2001). The judge must determine what is "in the over-all best interest of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and biological parent." *Adoption of Vito*, 431 Mass. 550, 562 (2000). We review the

---

[4] A pseudonym.

judge's determination for an abuse of discretion. *Adoption of Saul*, 60 Mass. App. Ct. 546, 555 (2004).

The judge reasonably declined to order postadoption visitation between the biological parents and Sam. The judge found that neither the father nor the mother had developed a significant attachment with the child. Unlike his siblings, Sam had never lived with either the mother or the father for a significant period of time. With respect to the mother, the judge found the adoptive family to be sincere in their expressed desire to allow visitations consistent with Sam's best interests. Thus, the judge found it unnecessary to issue a visitation schedule. *Adoption of Vito*, 431 Mass. at 563. On the other hand, with respect to the biological father, the judge received sufficient evidence to determine that given the father's troublesome behavior, he is unfit to interact with the child. Thus, the judge terminated the father's visitation rights. The judge acted well within his discretion in arriving at these determinations. *Id.* at 556-557.

3. *Postadoption parental visitation in regard to the three oldest children.* The biological mother and the three oldest children appeal the judge's order for six scheduled visits per year between the children and the mother as insufficient. "A judge should issue an order of visitation only if such an order, on balance, is necessary to protect the child's best interest." *Adoption of Ilona*, 459 Mass. 53, 65 (2011). In arriving at his decision, the judge considered that the children have a bond with their biological mother. The judge balanced this reality with the fact that a more extensive visitation schedule could interfere with the relationship between the adoptive parents and the children.[5] Moreover, in his order, the judge only set forth a minimum number of visits, and the adoptive parents may arrange for additional visits if they find such visits to be in the best interests of the child. See *Adoption of Ilona*, 459 Mass. at 63.

4. *Sibling visitation.* The three older children appeal the judge's determination to refrain from scheduling court-ordered posttermination and postadoption sibling visitation, and they request a

---

[5]"The purpose of such contact is not to strengthen the bonds between the child and his biological mother or father, but to assist the child as he negotiates, often at a very young age, the tortuous path from one family to another." *Adoption of Vito, supra* at 564-565.

formal visitation order.[6] The judge acknowledged the necessity of sibling visitation, but left the timing and frequency of such visits to the discretion of the adoptive parents.

If siblings are separated through adoption, a judge "shall, whenever reasonable and practical and based upon the best interests of the child, ensure that children . . . shall have access to and visitation with siblings." G. L. c. 119, § 26B(*b*), inserted by St. 2008, c. 176, § 84. The Supreme Judicial Court in *Adoption of Rico*, 453 Mass. 749, 753 n.12 (2009), agreed with the Appeals Court in distinguishing between parental and sibling visitation based on G. L. c. 119, § 26(5), inserted by St. 1997, c. 43, § 99, a prior statute which is as to the same effect as the current one, G. L. c. 119, § 26B(b). As we stated, the statutory "provisions reflect a legislative determination that the judge must decide whether and, if so, how sibling visitation is to occur, . . . but also the schedule and conditions of visitation." *Adoption of Rico*, 72 Mass. App. Ct. 214, 220-221 (2008). See *Adoption of Galvin*, 55 Mass. App. Ct. 912 (2002). Cf. *Adoption of Vito*, 431 Mass. at 564 n.25 ("While contact with siblings and contact with biological parents may pose different challenges in the adoptive setting, and may be governed by different statutory considerations, in terms of intrusion on the prerogatives of the adoptive family, judicial requirement of contact with biological siblings might not differ significantly for a requirement for contact with parents").

In light of the above, and respectful of the judge's determinations, we remand for the judge to provide a schedule for post-termination and postadoption sibling visitation. In all others respects, we affirm the decrees.

*So ordered.*

---

[6]The mother states that "[t]o the extent [she] has standing, see G. L. c. 119, § 26B(*c*), she joins appellant-children's argument of this issue." Implicit in mother's argument is the recognition that she is precluded by § 26B(*c*) from raising the sibling visitation issue on appeal because the Juvenile Court has entered a decree dispensing with her consent to adoption.