NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-503

ADOPTION OF BRAYDEN (and three companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from decrees issued by a judge of the Juvenile Court finding her unfit and terminating her parental rights to four of her children. The mother also argues the judge's order of twice yearly posttermination and postadoption parent and sibling visitation was an abuse of discretion.[2] The eldest child, Brayden, appeals from the decree terminating the mother's parental rights to him. We affirm.

Background. We summarize the judge's findings of fact, supplemented by uncontroverted evidence from the record. The mother first became involved with the Department of Children and Families (department) in 2000 when she was six years old, after she was removed from her parents' custody and her maternal

---

[1] Adoption of Lisa; Adoption of Nicole; and Adoption of Robert. The children's names are pseudonyms.

[2] Brayden's and Lisa's father, who is also Nicole's and Robert's putative father, did not appeal from the termination of his parental rights. We refer to him throughout this decision as "the father."

grandmother was given guardianship. Both of the mother's parents were drug addicted and she suffered neglect and physical abuse from them. She was adopted by her maternal grandmother when she was eleven, but later lived with her paternal grandmother. The mother became pregnant with Brayden when she was thirteen and the father was twenty-four years old. The mother and the father had three other children, Lisa in 2014, Nicole in 2018, and Robert in 2019.

In 2015, a G. L. c. 119 § 51A, report (51A report) was filed following the parents' arrest for possession with intent to distribute a class A substance and conspiracy to violate the drug laws after police found heroin in the home. The two older children were removed by the department and eventually placed in foster care. Custody of both children was returned to the mother in 2016.

Beginning in May 2019, multiple 51A reports were filed based on reports of domestic violence, substance abuse, unstable housing, mental health concerns, and the mother's criminal activity. The department filed this care and protection petition in October 2019 due to domestic violence in the home and was granted temporary custody of the children. At the time, Brayden was ten years old, Lisa was five years old, Nicole was ten months old, and Robert was two months old. The judge

subsequently granted conditional custody of the children to the mother.

Over the next year, numerous 51A reports were filed alleging lack of appropriate supervision, inappropriate caretakers, educational neglect, and concerns with the mother's substance abuse. In November 2020, the department conducted an emergency removal of the children after Lisa was left at school despite several attempts to reach the mother. The department filed a motion for custody of the children. At the seventy-two hour hearing, the parents waived their rights to a temporary custody hearing.

Following a trial held on January 22, 2021, the judge found the mother unfit, adjudicated the children to be in need of care and protection, and granted permanent custody to the department.[3] The judge did not terminate the mother's parental rights and afforded her six months to work toward the department's goal of reunification.

On August 11, 2021, the department moved for review and redetermination pursuant to G. L. c. 119, § 26. By then, the department's goal had changed from reunification to adoption. The judge held a one-day trial in September 2021 and approximately one month later, on October 18, 2021, issued

---

[3] The father stipulated to his own parental unfitness.

3

decrees terminating the mother's parental rights to the four children.  On January 19, 2022, the judge issued detailed findings supporting his conclusions that the mother was currently unfit to parent the children, her unfitness was likely to continue into the indefinite future, and the department's adoption plan for each child served the children's best interests.  See G. L. c. 210, § 3; Adoption of Nancy, 443 Mass. 512, 515-516 (2005).  The judge ordered twice per year posttermination and postadoption parent and sibling visitation.

Discussion.  1.  Termination of parental rights.  "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests" (citation omitted).  Adoption of Oren, 96 Mass. App. Ct. 842, 844 (2020).  "[T]he 'parental fitness' test and the 'best interests of the child test' are not mutually exclusive, but rather 'reflect different degrees of emphasis on the same factors.'"  Adoption of Garret, 92 Mass. App. Ct. 664, 671 (2018), quoting Care & Protection of Three Minors, 392 Mass. 704, 714 (1984).  In making this determination, the judge considers "the ability, capacity, fitness and readiness of the child[ren]'s parents as well as the plan proposed by [the

4

department]" (quotations omitted).  Adoption of Garret, supra at 675, quoting Adoption of Nancy, 443 Mass. at 515-516.  "The inquiry is whether the parent's deficiencies 'place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child'" (citation omitted).  Adoption of Olivette, 79 Mass. App. Ct. 141, 157 (2011).  "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).

The mother argues that the judge erred in his analysis of the children's best interests by failing to consider evidence of the bond the children have with her, Brayden's custodial preferences, and the department's failure to identify preadoptive placement for the three oldest children.  Brayden contends that the department did not meet its burden to prove by clear and convincing evidence that termination of the mother's parental rights was in his best interests based on his age, his strong bond with the mother, and the "inadequacy" of the adoption plan.  He further asserts that the judge failed to consider his wishes.[4]  We disagree.

---

[4] Neither the mother nor Brayden appear to contest the judge's finding that the mother is currently unfit.

5

The mother's unfitness resulted from a "constellation of factors." Adoption of Greta, 431 Mass. 577, 588 (2000). Her relationship with the father was punctuated by repeated episodes of domestic violence witnessed by the children. During the pendency of the care and protection case, the mother continued to engage in relationships with partners who physically abused her and encouraged her use of drugs, including opiates and cocaine.[5] See Adoption of Bianca, 91 Mass. App. Ct. 428, 432 (2017) (judge may properly consider effects of domestic violence, substance use, and instability on ability to form bond with children). The mother also has struggled with substance abuse since she was a young teenager. At trial, she testified that she used cocaine one month prior while pregnant with her fifth child. The mother also accidentally burned down her home after starting a fire in the fireplace using paper, children's coloring books, and children's socks as tinder. The judge did not credit the mother's denial that she was using substances or medications on the day of the fire. See id. The mother has been diagnosed with bipolar disorder, depression, anxiety, and posttraumatic stress disorder. Her mental health issues twice required psychiatric hospitalization while this case was

_____

[5] While the children were in the mother's conditional custody, multiple 51A reports were filed concerning the father's presence, violence, and substance use in the home, as well as the mother's new boyfriend selling drugs from the home.

6

pending.  See Adoption of Frederick, 405 Mass. 1, 9 (1989) ("Mental disorder is relevant only to the extent it affects parents' capacity to assume parental responsibility").  At the time of trial, the mother did not have stable housing.  See Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) (lack of "stable home environment" valid consideration in unfitness determination).  Moreover, when given conditional custody of the children in 2019, the mother failed to comply with the stipulations that she permit only caretakers authorized by the department to care for the children, participate in comprehensive mental health treatment, ensure the children attended school and day care daily, ensure the children were not exposed to anyone under the influence of substances, and refrain from contact with the father.  Furthermore, she was charged with disorderly conduct and, in a separate case, with crimes including assault and battery by means of a dangerous weapon, assault and battery, malicious destruction of property, and resisting arrest.

Even after the department interceded, the mother failed consistently to participate in services and treatment to address the issues that caused the removal of her children.  See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) ("The mother's lack of meaningful participation in recommended services was also relevant to the question of her fitness").  When asked at

7

trial why she needed to be hospitalized, the mother testified, "because of everything I endured," "your guess is as good as mine," and she "guess[ed]" that medical professionals "believed [she] needed to be there."

We agree with the judge's determination that the mother "lacked insight" into why she was hospitalized and about the neglectful conditions she created for the children when she had conditional custody of them. The judge found that her inconsistency with services demonstrated a "lackadaisical attitude" that would impede her ability to be a "consistent force in the children's lives" and that the mother "cannot meet the basic needs of these four children." We are mindful of the challenges the mother has faced since she was a child and the irony that many of them began when she was in the custody of the department. However, regardless of the underlying causes of the mother's circumstances, we discern no abuse of discretion in the judge's determination that her unfitness would "continue undiminished into the foreseeable future," and therefore termination of her rights was in the children's best interests. See Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012) ("Where there is evidence that a parent's unfitness is not temporary, the judge may properly determine that the child's welfare would be best served by ending all legal relations between parent and child").

8

a. <u>The children's bond with the mother</u>. We are not persuaded by the argument that the judge did not consider the bond between the children and the mother when determining that termination of her parental rights was in their best interests. The judge recognized the children's relationship with the mother, and specifically referenced the department social worker's testimony that Brayden "would struggle without visits with Mother." We are satisfied on the record in this case that the judge did not abuse his discretion by weighing this evidence and concluding that despite this bond, termination of the mother's parental rights was in the children's best interests. See <u>Adoption of Vito</u>, 431 Mass. 550, 562 (2000).

b. <u>Adoption plans</u>. "In determining the best interests of the child, the judge must consider, among other things, 'the plan proposed by the department.'" <u>Adoption of Varik</u>, 95 Mass. App. Ct. 762, 770 (2019), quoting G. L. c. 210, § 3 (<u>c</u>). "The law does not require that the adoption plan be fully developed in order to support a termination order, but it must provide sufficient information about the prospective adoptive placement so that the judge may properly evaluate the suitability of the department's proposal" (quotations omitted). <u>Id</u>., quoting <u>Adoption of Willow</u>, 433 Mass. 636, 652 (2001). Although the three oldest children were not in preadoptive placements at the time of trial, the judge properly considered the department's

adoption plans for those children as adoption through recruitment.[6]  See Care & Protection of Three Minors, 392 Mass. at 717.  "[P]articularly in a case that has continued for a long period of time in the hope that the [parents] could and would successfully rehabilitate [themselves] . . . children deserve permanence and stability."  Adoption of Nancy, 443 Mass. at 517.

The mother raises concerns that termination of her rights places Brayden at risk of becoming a legal orphan.  See Adoption of Ramona, 61 Mass. App. Ct. 260, 265 (2004).  While Brayden was at the age where he could withhold his consent for adoption, see G. L. c. 210, § 2, the judge found that at times Brayden expressed that he did not want to return to the mother's care, despite also indicating that he wanted to go home because "he missed his friends . . . and the life he could have had if his parents had not messed it up for him."

In addition to his contention that termination of the mother's parental rights was not in his best interests because he had a strong bond with her, Brayden asserts that he does not wish to be adopted, and, in any event, the department's adoption plan for him was inadequate.  "A judge should consider the wishes of the children in making custodial determinations, and those wishes are entitled to weight in custody proceedings"

---

[6] The youngest child's adoption plan called for adoption by his current foster parents.

(quotation and citation omitted).  Adoption of Nancy, 443 Mass. at 518.  However, a child's views are "neither decisive . . . nor outcome determinative."  Id.  Here, the judge carefully considered Brayden's age, his bond with the mother, opinions about whether he wanted to return home, and testimony about what would be best for Brayden's well-being.  See Adoption of Garret, 92 Mass. App. Ct. at 675-676.  The judge also weighed the testimony of the adoption social worker that Brayden's behavioral needs necessitated a two-parent home that provides him with structure and outdoor activities and that Brayden did not want to be placed with his siblings.  Compare Adoption of Varik, 95 Mass. App. Ct. at 771.  Moreover, the department's written plan for Brayden expressed "various recruitment actions that the department had already taken and further actions it would take."  Adoption of Gertrude, 99 Mass. App. Ct. 817, 823 (2021).

We therefore discern no abuse of discretion in the judge's conclusion that termination of the mother's parental rights coupled with the department's adoption plan were in the children's, and more particularly Brayden's, best interests. See Adoption of Willow, 433 Mass. at 653.[7]

---

[7] The other children do not challenge the department's adoption plans.

2. _Visitation_. a. _Parental visitation_. The mother requests a visitation order that "allows for regular and frequent visitation with [Brayden], [Lisa], and [Nicole], and reasonable visitation with [Robert]." Brayden maintains that, in the event the decree terminating the mother's rights to him is affirmed, the case should be remanded to increase the amount of posttermination contact between him and the mother.

"In terminating parental rights pursuant to G. L. c. 210, § 3, the Juvenile Court judge has equitable authority to order visitation between a child and a biological parent where such contact is in the best interests of the child." Adoption of Garret, 92 Mass. App. Ct. at 679. "Whether such contact in any given case is wise is a matter that should be left to the discretion of the judge." Youmans v. Ramos, 429 Mass. 774, 783 (1999). "A judge should issue an order of visitation only if such an order, on balance, is necessary to protect the child[ren]'s best interest[s]." Adoption of Ilona, 459 Mass. at 65.

Here, the judge found that a significant bond existed between the children and the mother, and it would be in the children's best interests to maintain posttermination and postadoption visitation with the mother two times per year. In ordering such visitation, the judge considered Brayden's request

12

to visit the mother twice per year.  We discern no abuse of discretion.  Cf. Adoption of Rico, 453 Mass. 749, 759 (2009).

b.  Sibling visitation.  Brayden contends that the judge abused his discretion in ordering two sibling visits per year, leaving additional visitation at the discretion of the department, preadoptive placements, or postadoptive placements, because at the time of trial the children had weekly visits and were not in permanent placements.[8]  See G. L. c. 119, § 26B.  We review an order regarding sibling visitation for abuse of discretion.  See Care & Protection of Jamison, 467 Mass. 269, 280 (2014).

The judge ordered that sibling visits "shall include but not be limited to visits in the months of June and December at a time and a place agreed to by the pre-adoptive and post-adoptive parties or the [department] if no[] such parties have materialized."  The judge's order of two visits per year was a minimum, not a cap on visitation.  Accordingly, there was no

---

[8] The mother joins Brayden's argument regarding sibling visits. However, she is precluded by G. L. c. 119, § 26B (c), from raising the sibling visitation issue on appeal because the Juvenile Court has entered a decree dispensing with her consent to adoption.  See Adoption of Zander, 83 Mass. App. Ct. 363, 367 n.6 (2013).

13

abuse of discretion in the judge's sibling visitation order.
See Adoption of Garret, 92 Mass. App. Ct. at 681.

                                    Decrees affirmed.

                                    By the Court (Englander,
                                      Grant & Brennan, JJ.[9]),

                                    *Joseph F. Stanton*

                                    Clerk


Entered:   June 7, 2023.

---

[9] The panelists are listed in order of seniority.