NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1246

ADOPTION OF LAVAR (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and the father appeal from decrees issued by a judge of the Juvenile Court terminating their parental rights to their children, Lavar and Kevin.  Both the mother and father have a lengthy history with the Department of Children and Families (DCF).  Despite DCF involvement since 2016, the mother and father have continued to use illegal substances; the mother has been unable to secure stable housing; and the father has struggled with mental health issues.  After a March 2023 trial, the judge found both the mother and father unfit, terminated their parental rights, and ordered posttermination and postadoption visitation.  However, the judge made no findings concerning the mother's proposal at trial to place the children

_____

[1] Adoption of Kevin.  The children's names are pseudonyms.

with the maternal grandparents.  We affirm the portions of the decrees adjudicating the parents currently unfit and finding the children in need of care and protection.  We vacate the portions of the decrees terminating the mother's and father's parental rights and concluding that adoption serves the best interests of the children, and we remand for findings regarding the mother's placement proposal.

Discussion.  We review "to determine whether the judge's findings were clearly erroneous and whether they proved parental unfitness by clear and convincing evidence."  Custody of Eleanor, 414 Mass. 795, 802 (1993).  "[S]ubsidiary evidentiary findings need only be proved by a fair preponderance of the evidence."  Care & Protection of Laura, 414 Mass. 788, 793 (1993).  "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."  Adoption of Ilona, 459 Mass. 53, 59 (2011).

Both the mother and father challenge the judge's findings that they are unfit and that DCF made reasonable efforts to reunite the children with them.  The father further challenges the posttermination and postadoption visitation order, and the

2

mother challenges the judge's failure to consider her alternative placement plan.  We address each argument in turn.

1.  <u>Fitness and reasonable efforts</u>.  a.  <u>Father's unfitness</u>.  The judge concluded that the father was unfit based primarily on his mental health and substance use issues, as well as because of his housing instability, and inconsistent visitation with the children.  On appeal, the father challenges the judge's finding of unfitness on three grounds.

First, the father argues that the judge exaggerated his criminal history.  The father contends that his most recent criminal conviction was in 2017 and thus is stale, and that all other charges against him were dismissed or resolved in his favor, meaning the judge could not consider them.  We need not address the substance of these claims, because the judge's decision appears to have given no weight to father's criminal history.  None of the judge's conclusions of law rely on that history as evidence of unfitness.  Thus, any errors in the judge's findings of fact on the subject were not prejudicial.

To be sure, the judge found that at the time the father was arrested in April 2021 for possession of a class E substance (dextroamphetamine) and larceny, he was purchasing heroin.  And the conclusions of law referred back to that finding.  But the focus of the conclusions was the father's ongoing substance use issue, and the fact of the arrest was shown on the father's CARI

3

report.  Even if, as the father argues, it was error to admit evidence that he was trying to buy heroin at the time,[2] that would not invalidate the judge's well-supported finding that the father was still abusing substances.

Second, and relatedly, the father contends that he was sober throughout much of DCF's involvement with his family, apart from a brief relapse in 2019, and so the judge erred in considering his substance use history as evidence of unfitness. The evidence at trial, however, was that as of April 2021 the father had an open charge of possession of a class E substance,[3] and since then had not been in sufficient contact with DCF to allow for the evaluation of his sobriety.  Additionally, the

---

[2] That evidence consisted of a DCF investigative report under G. L. c. 119, § 51B (51B report), which quoted a newspaper article, which quoted statements by police, which paraphrased statements made to them by the alleged seller of the heroin. Although "first- and second-level hearsay contained within DCF reports" is admissible if it meets certain criteria, Adoption of Luc, 484 Mass. 139, 153 (2020), the evidence at issue here was third- or fourth-level hearsay.

[3] The father's brief attaches a docket sheet showing that the charge was dismissed for lack of prosecution in April 2022, before the care and protection trial.  Such evidence was apparently not introduced at trial, however, and a dismissal for lack of prosecution can occur for multiple reasons and does not establish that the charge was "meritless," as the father suggests.  Nor was there evidence at trial to support the assertion in the father's reply brief that the father possessed the class E substance in order to treat one of his psychiatric conditions.  The father did not testify at trial, from which the judge permissibly drew a negative inference.

father ceased substance use and mental health treatment with the Department of Veteran's Affairs after his arrest.

The father asserts that he graduated from Dedham District Court drug court probation by July 2021, but the evidence on this point is equivocal at best,[4] and it certainly did not require the judge to find that substance use was no longer a problem by 2021, given the pending drug charge against him. Similarly, the father argues that DCF monitored visits in 2021 and thereafter yet never reported his attending visits under the influence, but this did not require the judge to find that substance use was no longer a problem. Based on his 2021 drug arrest, cessation of treatment, and subsequent avoidance of DCF and failure to testify at trial, the judge could reasonably infer that the father continued to struggle with substance use. The judge could also have reasonably concluded that the father's substance use posed a danger to the children, as when a 2018 police search of their apartment found approximately fifty of

---

[4] A 2018 51B report states that the father was part of a veterans' court program, with a probation officer from Dedham, and also that he was involved with a drug court. A July 2021 family assessment stated that the father had "graduated from his probation," without further details. The father's CARI report does not show that he was ever on probation in a Dedham District Court proceeding; it does show that he was on some unspecified form of probation in Quincy District Court that appears to have terminated in November 2020. We see no evidence of graduation from a drug court program in or around July 2021.

the father's prescription bottles, as well as drug paraphernalia, hidden throughout the home.

Finally, the father asserts that the judge inappropriately "found fault" with him for declining DCF's recommendation that he attend grief counselling after the sudden, tragic death of his infant child.[5]  Although we agree that his lack of engagement in grief counselling would not be evidence of unfitness, we do not agree that the judge treated it as such or found fault with the father in this regard.  The judge included these findings in a passage recounting father's mental health history and seems to have considered the issue solely as context for the father's other mental health issues.  The findings themselves were supported by testimony, and they led to no prejudice to the father.  Thus, we do not disturb the judge's finding of the father's unfitness.

b.  Mother's unfitness.  The judge concluded that the mother was unfit based primarily on three factors.  These were her (1) substance use issues, (2) inability or unwillingness to provide suitable housing for the children, and (3) mental health issues.  On appeal, the mother challenges the manner in which the judge considered her mental health.

---

[5] This child was born between Lavar and Kevin.

6

The judge found that the "[m]other's mental health needs are directly tied to her substance use," but he made no findings concerning the nature of those needs or the nexus between them and her parental fitness. However, the mother does not argue that the concerns about her mental health were essential to the judge's ultimate finding of parental unfitness. The judge considered a plethora of evidence concerning the mother's substance use, and difficulty providing suitable housing, that supported his overall finding of unfitness. We conclude that concerns about the mother's mental health were not essential to the judge's ultimate finding, by clear and convincing evidence, that the mother was unfit. We do not disturb that finding.

c. <u>Reasonable efforts concerning father</u>. The father argues that DCF violated the requirement that, "[b]efore seeking to terminate parental rights, [it] must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents." <u>Adoption of Ilona</u>, 459 Mass. at 60. More specifically, he argues that DCF, contrary to the requirements of its own disability policy, failed to provide accommodations for his well-documented psychiatric disability. See G. L. c. 119, § 1; DCF Disability Policy #2022-01 (January 18, 2022).[6]

---

[6] We cite to the version of the policy in effect during the proceedings.

7

While DCF's disability policy requires it to take certain steps to provide accommodations to parents with disabilities, it is still a parent's obligation to "raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made." Adoption of Gregory, 434 Mass. 117, 124 (2001). As in Adoption of Gregory, "the father was represented by counsel, who could have raised the issue at an earlier point in time." Id. The reasonable efforts argument was not raised, either to the Juvenile Court or apparently to DCF prior to trial, and therefore it is waived. See id.; Adoption of West, 97 Mass. App. Ct. 238, 242 (2020).

The father nevertheless argues that he may raise the argument now based on Adoption of Chad, 94 Mass. App. Ct. 828 (2020). In that case, the court rejected a waiver argument on the ground that "the extent to which available supports could have compensated for the mother's cognitive deficiencies was a theme that ran through the life of the case." Id. at 839 n.20. The father here argues that his psychiatric diagnoses and history "were well known to DCF throughout the life of this case." But that is not enough to implicate Adoption of Chad. What must run through the life of a case is not merely a parental condition known to DCF to impede family reunification, but some disagreement over whether DCF reasonably could further provide accommodations to help the parent remedy that condition.

8

The father points to no evidence of such a dispute here.  Cf. Adoption of West, 97 Mass. App. Ct. at 243 (notwithstanding mother's reliance on Adoption of Chad, she had not "put the department or the judge on notice of her current claim of inadequate services"); id. at 245 (claimed failure to provide services in Spanish was not "a theme of the case").  Adoption of Chad does not create a rule superseding Adoption of Gregory, where the Supreme Judicial Court held that a claim for inadequate services, including by a disabled parent, must be timely raised or it is waived.  See Adoption of Gregory, 434 Mass. at 124.  Thus, even if DCF did not make sufficient accommodations for the father here, the reasonable efforts argument is waived.

d.  Reasonable efforts concerning mother.  The mother argues that while DCF faulted her for failing to comply with mental health-related tasks on her action plan, DCF offered no support to assist her in accomplishing these tasks, thereby failing to make reasonable efforts to reunite her with the children.  The mother made no such argument below, however, so it is waived on appeal.  See Adoption of West, 97 Mass. App. Ct. at 242.

2.  Visitation.  Next, the father argues it was an abuse of discretion for the judge, in ordering four posttermination visits per year and two postadoption visits per year, to fail to

9

make specific and detailed findings about why more frequent visits were not in the children's best interests. But the father cites no authority to support the proposition that such findings are required, nor does he make any argument as to why they should be required. Moreover, as to the reduction from four to two visits annually once the children are adopted, we note that any order for postadoption visitation is an "intrusion . . . on the rights of the adoptive parents, who are entitled to the presumption that they will act in their child's best interest." Adoption of Ilona, 459 Mass. at 64-65. Accordingly, court-ordered visitation between a parent and a child will often be reduced (if not eliminated entirely) once a child is adopted. We know of no mathematical formula for determining the appropriate frequency of such visits, which must be left to the judge's discretion. See Adoption of Zander, 83 Mass. App. Ct. 363, 365 (2013). Nor does it appear from the record that the father argued to the judge that any greater number of visits should be ordered; for example, his closing argument at trial was silent on the issue. In these circumstances, the judge was under no obligation to make findings explaining why more visitation was not ordered, and we see no abuse of discretion in the visitation orders as entered.

3. Termination and placement. The mother argues that the judge erred by failing to consider her placement plan for the

10

children.  A judge must consider the placement plans proposed by both DCF and the parents and "then determine which placement will serve the best interests of the child."  Adoption of Dora, 52 Mass. App. Ct. 472, 474-475 (2001).  "The judge's obligation to consider a plan involves much more than simply examining it.  The judge must perform a careful evaluation of the suitability of the plan and must meaningfully . . . evaluate what is proposed to be done for the child" (quotations and citation omitted).  Id. at 475.

At trial, the mother proposed that her rights not be terminated and that the maternal grandparents be given custody of the children.  The maternal grandfather testified that he and the maternal grandmother would "be willing to take the boys, adopt them, or anything we have to do to take them to our home."  He further testified that he was able to care for the children because he is financially stable, retired, lives in a four-bedroom house, and feels a strong connection with the children.  Even if, as DCF notes, the mother's closing argument asked that the maternal grandparents be given "custody" of the children, rather than expressly using the word "adopt," the judge still was required to consider and make findings of fact about the mother's proposed plan.  "A judge should provide an 'even handed' assessment of all the facts surrounding both the department's plan and any competing custody or adoption plan"

11

(emphasis added; citation omitted).  Adoption of Hugo, 428 Mass.

219, 226 & n.8 (1998), cert. denied sub nom. Hugo P. v. George

P., 526 U.S. 1034 (1999).  See Adoption of Dora, 52 Mass. App.

Ct. at 474-475 (judge must consider not only DCF's adoption plan

but also "parental nominations of caretakers" and then determine

which "placement" will serve best interests of child).  It was

error not to do so.

As the court explained in Adoption of Dora:

"[U]nless the biological parents' proposed alternative
plan for adoption is considered before a decree
[terminating parental rights] issues . . . they may lose
the opportunity to advocate their point of view.  Such a
result would be inconsistent with the principle that
parental nominations of caretakers are to be considered in
cases of this nature."

52 Mass. App. Ct. at 476-477.  Therefore, as in Adoption of

Dora, we must vacate the portions of the decrees terminating the

mother's and father's parental rights.  A limited remand is

required so that the judge may "take additional evidence, if

necessary, and make a determination as to the appropriate . . .

placement" for each child.[7]  Id. at 478.  "If any party wishes to

---

[7]  Contrary to DCF's suggestion, this is not a case like
Adoption of Varik, 95 Mass. App. Ct. 762 (2019), where the court
vacated that part of a decree approving an adoption plan, and
remanded for further proceedings regarding that plan, while
affirming the decree insofar as it terminated a parent's rights.
See id. at 774, citing Adoption of Cadence, 81 Mass. App. Ct.
162, 174 (2012).  As the court stated in Adoption of Varik, that
case, unlike Adoption of Dora, did not involve a competing plan
proposed by a biological parent.  See Adoption of Varik, supra
at 772-773.

12

appeal from the judge's decision, such an appeal may be brought before [us] for expedited review by the same panel."  Id. at 479.

Conclusion.  We affirm the portions of the decrees adjudicating the parents to be currently unfit and determining that the children are in need of care and protection.  We vacate those portions of the decrees determining that adoption serves the best interests of the children and terminating the mother's and father's parental rights, and we remand the matter for further proceedings consistent with this memorandum and order. The orders for visitation currently in effect shall remain in effect, subject to further action by the Juvenile Court.

So ordered.

By the Court (Meade, Sacks & Hodgens, JJ.[8]),

Clerk

Entered:  March 18, 2025.

---

[8] The panelists are listed in order of seniority.